135 N.J. Super. 108 (1975)
342 A.2d 859
HAZEL MAE FOX, PLAINTIFF-APPELLANT,
v.
PASSAIC GENERAL HOSPITAL, GUADALUPE OLIVAR, AND EMILIA C. LAYUGAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1975.
Decided June 26, 1975.
*109 Before Judges MICHELS, MORGAN and MILMED.
Mr. Daniel Crystal argued the cause for appellant (Messrs. Cohn & Lifland, attorneys).
Mr. Edward E. Kuebler argued the cause for respondents.
PER CURIAM.
Plaintiff appeals from a summary judgment entered in favor of defendants in the Law Division on the ground that plaintiff's claim was barred by the statute of limitations.
Plaintiff was admitted on October 25, 1970 to defendant Passaic General Hospital by Dr. Peter J. DeBell. A cholecystectomy was performed by Doctor DeBell on October 26, 1970. The next morning Doctor DeBell changed the dressing covering the incision, at which time plaintiff observed a drain in the incision. Frequent changes of the dressing were necessary in order to absorb the fluid draining from the incision. After a few days Doctor DeBell shortened the length of the drain. Thereafter, on or about October 30, 1970 the nurses who were changing the dressing were unable to locate the drain. The following morning plaintiff informed Doctor DeBell that the drain was missing, and he assured her that "[i]t didn't matter. It was going to come out in a day or two anyway."
Plaintiff was discharged from Passaic General Hospital on November 3, 1970 but continued to feel miserable, complaining that she felt something jabbing inside of her stomach. She developed a fever which she thought was due to the flu. When her fever became very high and her pain more severe she returned to Doctor DeBell, who diagnosed her condition as a post-operative infection and arranged for her to be readmitted to Passaic General Hospital the following day. *110 Plaintiff re-entered the hospital on November 17, 1970, at which time Doctor DeBell by operative intervention drained the intra-abdominal abscess and reinserted another drain in the incision. Plaintiff was discharged from the hospital on November 30, 1970 with instructions to return to Doctor DeBell for follow-up care. Plaintiff did so. When Doctor DeBell removed the drain sometime in December 1970 plaintiff told Doctor DeBell that she still had pain in the lower portion of her abdomen and suggested to him that perhaps the original drain might still be inside her body. Doctor DeBell reassured her that it was not, specifically telling her that he had looked for the drain during the second operation and that "it wasn't there."
The incision, however, continued to drain, causing plaintiff severe pain. Finally, on February 22, 1971 she went to the Emergency Ward of the Chilton Memorial Hospital where x-rays revealed the presence of a foreign body in her right mid-abdomen. Arrangements were immediately made for plaintiff to enter St. Joseph's Hospital that same day. On March 2, 1971 another abdominal operation was performed by another surgeon, and the original drain was removed from plaintiff's abdomen. Plaintiff was discharged on March 7, 1971.
On March 31, 1971 plaintiff filed suit against Doctor DeBell, charging him with medical malpractice arising out of his failure to locate the drain and remove it during the course of his post-operative care and treatment. Following the settlement of the claim against Doctor DeBell, plaintiff instituted this action against Passaic General Hospital and one of its nurses, Guadalupe Olivar, on December 1, 1972, charging them generally with negligence in her post-operative treatment and care. Thereafter the complaint was amended to join as a defendant Emilia Layugan, another nurse employed by the hospital, who rendered care to plaintiff following her first operation.
Prior to the selection of a jury defendants moved for summary judgment on the ground that plaintiff had failed to *111 institute suit within the time prescribed by the statute of limitations. The trial judge granted defendants' motions, holding that the discovery rule did not apply in view of the particular fact situation presented, and therefore the statute commenced to run from the date of injury rather than from the date plaintiff knew that the drain was in her abdomen. We disagree.
The discovery rule, which was first announced by our Supreme Court in Fernandi v. Strully, 35 N.J. 434 (1961), provides that in an appropriate case a cause of action will not be held to accrue until the injured party discovers or by an exercise of reasonable diligence and intelligence should have discovered that a basis for an actionable claim exists. Although the Fernandi decision confined itself to foreign body malpractice actions, subsequent decisions have gone much further, applying the discovery doctrine to medical malpractice actions involving claims other than foreign objects in the body. See Lopez v. Swyer, 62 N.J. 267, 273 (1973); Yerzy v. Levine, 108 N.J. Super. 222 (App. Div. 1970), aff'd as mod. 57 N.J. 234 (1970).
While we recognize that it is not every belated discovery that will justify lifting the bar of the statute of limitations, we are satisfied from a fair consideration of all of the relevant facts and circumstances that plaintiff was equitably entitled to the benefit of the rule. Although plaintiff observed that the drain was missing when the nurse changed the dressing on October 30, 1970, and while she suspected that it might be inside her thereafter, she did not know nor did she have reason to know of the existence of this object in her abdomen until the x-ray was taken on February 22, 1971 and it was removed by subsequent surgical intervention on March 2, 1971. Whatever suspicion she may have had as to the existence of this fact was allayed by Doctor DeBell, particularly when he told her sometime in December 1970 that the drain was not there. The conclusion is inescapable that plaintiff did not know or have reason to know of the existence of the drain in her abdomen until it was discovered by x-ray *112 and surgically removed. The trial court's finding of fact to the contrary was not supported by sufficient credible evidence. State v. Johnson, 42 N.J. 146, 162 (1964).
The lapse between the time the drain was first missed on October 30, 1970 and the institution of this action on December 1, 1972 (approximately 25 months) did not create the danger of a false, frivolous, speculative or uncertain claim. The claim does not raise questions as to plaintiff's credibility nor does it rest on matters of professional diagnosis, judgment or discretion. Plaintiff's claim rests on the presence of a foreign object within her abdomen following the post-operative care by Doctor DeBell and defendant hospital and its employee nurses. See Fernandi v. Strully, supra, 35 N.J. at 450-451; Yerzy v. Levine, supra. See also, New Market Volunteer Farms, Inc. v. Fellows, 51 N.J. 419, 425 (1968). Moreover, the witnesses and written evidence, including all hospital records, are available. There is no suggestion that the delay has prejudiced defendants in any way.
Finally, we do not agree with defendants' contention that the discovery rule should not apply because plaintiff had approximately 20 months remaining of the statutory two-year period in which to commence suit after she knew of the existence of the cause of action. Fernandi v. Strully, supra, and the cases which followed make it clear that the period of limitations does not begin to run until plaintiff knows or has reason to know of the existence of the foreign object and the cause of action based upon its presence. Notwithstanding the suggestion to the contrary in the concurring opinion in Rothman v. Silber, 90 N.J. Super. 22, 36-38 (App. Div. 1966), certif. den. 46 N.J. 538 (1966), we conclude that plaintiff had two years within which to institute suit after she knew or had reason to know that she had a basis for a claim against any of the defendants. In Yerzy v. Levine, supra, decided after Rothman v. Silber, our Supreme Court in a brief per curiam opinion affirmed the Appellate Division decision for the reasons stated therein, "with the modification that under the facts of this case (1) the question with respect *113 to the statute of limitations is whether plaintiff brought this action within two years after plaintiff knew or had reason to know that plaintiff might have a basis for a claim against the defendant, * * *." Id., 57 N.J. at 235. Here, plaintiff instituted this action against the hospital and its nurses within that period of time.
Accordingly, the summary judgment in favor of defendants is reversed and the matter remanded for a trial on the merits.
MORGAN, J.A.D. (dissenting).
Implicit in the majority opinion is the view that the discovery rule automatically applies in all "foreign substance" malpractice cases so as to extend the limitation period for two years following actual or constructive discovery. I disagree and conclude that the circumstances of the present case do not equitably entitle plaintiff to the "indulgence" of the rule. Lopez v. Swyer, 62 N.J. 267, 276 (1973).
In all of the cases in which the rule has been successfully invoked, the cause of action had been barred by the normal period of limitations before the plaintiff became aware either of the injury or damage or the possibility that a claim therefor may exist. See, e.g., Lopez v. Swyer, supra; Yerzy v. Levine, 108 N.J. Super. 222 (App. Div. 1970), aff'd as mod. 57 N.J. 234 (1970); Fernandi v. Strully, 35 N.J. 434 (1961). In the present case, however, plaintiff obtained actual knowledge of her injury, the cause thereof, the real possibility of a claim and the identity of a tortfeasor within four months of the date of the tort as recited in her complaint, leaving her approximately 19 months of the statutory period of limitations in which to start suit against them. In fact, she did start suit against the doctor within weeks after she learned what had happened. At no time during the pendency of that suit did she seek to add the present defendants as parties to that action although she knew or easily could have discovered their identity or attempt to start an independent action against those parties. Rather she pursued her claim *114 against the doctor which resulted in a settlement in which she was paid $25,000. It was only after that settlement that the complaint initiating the present matter was filed, after the bar of statute, against those who she now contends were also tortfeasors. The delay was not the result of lack of knowledge concerning her injury, damages, the possible cause of action or the identity of the tortfeasors, the essential basis for invoking the relief provided by the discovery rule.
Moreover, this case does not present a classic instance of a foreign substance case. Plaintiff was not anesthetized at the time the drain was found missing. She was fully awake and aware of the possibility of what had happened because the doctor she sued was told at that time. Despite his reassurances that the drain had not fallen into the wound, she nonetheless, and with justification, continued to suspect its presence. Its discovery, some four months later, came as no surprise to her, but rather confirmed all of her suspicions which Dr. DeBell had tried to assuage. Her discovery triggered the expeditious commencement of a lawsuit against Doctor DeBell.
It was in these circumstances, evidenced by her own uncontradicted and accepted testimony, that the trial judge concluded, in substance, that plaintiff had failed to meet her burden of proving her right to the indulgence of the discovery rule. Lopez v. Swyer, supra 62 N.J. at 276. The conclusion reached finds ample support in the record, is neither arbitrary, capricious or contrary to law, and should not be disturbed by this court on appeal. State v. Johnson, 42 N.J. 146, 162 (1964). To do otherwise is to extend the benefits of the rule beyond the necessity for its creation and would result in substituting one court-created period of limitations for the normal statutory one in cases to which the discovery rule is held applicable. None of the cases dealing with various aspects of the rule gives any indication that such was the intendment of this recently developed extraordinary relief.
The discovery rule is one of equity and was developed as a means of avoiding the harsh results flowing from rigid *115 adherence to the statutory period in cases in which the injured person is barred from recovery before he knew or could have known of his injuries or his possible claim therefor. All of the cases in which it has been successfully invoked involve that kind of situation  where plaintiff would be barred before suit was possible. This rule was developed to avoid that grotesque result. See, e.g., the footnote in Lopez v. Swyer, supra at 276, in which English procedure is described and assimilated to our own wherein plaintiff must show that "`material facts of a decisive character' were not known to the plaintiff until after the running of the statute."
Rothman v. Silber, 90 N.J. Super. 22, 36 (App. Div. 1966), certif. den. 46 N.J. 538 (1966), provides one example of a case in which plaintiff's claim to the benefit of the discovery rule was rejected, albeit on grounds not particularly germane to the present problem. In the singularly perceptive concurring opinion, however, Judge Gaulkin identifies a problem remarkably similar to the one confronting this court and gave as his opinion that were the discovery rule to be applied, plaintiff would nonetheless be barred because the period of 16 months of the customary period of limitations following discovery of the injury and the possible claim was a fully sufficient time in which to bring suit.
Judge Gaulkin's conclusion in Rothman is equally applicable to the present case:
True, in Fernandi, the court was dealing with an action instituted more than two years after the operation. However, if the patient must proceed with reasonable diligence after knowledge after the statutory period has run, why not before? Here Mrs. Rothman had left 16 months of the statutory two years. It seems to me that under these circumstances justice does not require that an exception be made for her. On the contrary justice would seem to require that here the policy of the statute be upheld. [90 N.J. Super. at 37-38].
See also, Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 112 (1965).
*116 The purpose of statutes of limitations is to "stimulate litigants to pursue their causes of action diligently and to `spare the courts from litigation of stale claims.'" Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973):
When a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action. Where, however, the plaintiff does not know or have reason to know that he has a cause of action against an identifiable defendant until after the normal period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play. [Id.]
The discovery rule, to date, has been applied only to the latter situation described in Farrell  where the claim is barred before plaintiff has knowledge of it, and the language referred to in the majority opinion, concerning the delayed accrual of a cause of action, must be read in that context. I am not suggesting that if the injured party learns of the injury and the possible claim at the eleventh hour before the statutory period expires, that he is not equitably entitled to a reasonable time in which to expeditiously institute suit. He should not, however, be automatically given the same period of time afforded by the statutory period of limitation, and no case so holds. Rothman, in the concurring opinion, is to the contrary. See also, Fernandi v. Strully, supra 35 N.J. at 451.
For example, in a property damage case, such as was involved in Rosenau v. New Brunswick and Gamon Meter Co., 51 N.J. 130 (1968), where the statutory period is six, rather than two years, it is inconceivable that if plaintiff learns of the cause of action within months after the bar, he is entitled to wait an additional six years in the absence of an affirmative showing of prejudice to defendant. Equity enjoins those who seek its favors not to sleep on their rights. *117 By automatically affording a plaintiff favored with the discovery rule the statutory period in which to sue, the courts would be encouraging dilatoriness in derogation of both the purpose of the normal period of limitations and the policy that equity only aids the vigilant.
Two closely allied problems are here intertwined and are almost inseparable. The first is whether the present case is an appropriate one for the equitable application of the discovery rule. If it isn't, as I believe, then the statutory period applies and the claim is barred. If the rule is held applicable, then it must be determined whether the time afforded for suit after discovery equals the statutory period of limitations or whether suit must be brought expeditiously, within a reasonable time after discovery.
I have concluded that, whichever approach is taken, the claim is barred. Application of the discovery rule is not appropriate to this case, and if it were, the cause of action would nonetheless be barred because not expeditiously pursued. Rothman v. Silber, supra (concurring opinion).