778 A.2d 1176 (2001)
343 N.J. Super. 504
Richard SHELCUSKY and Donna Shelcusky, Plaintiffs-Appellants,
v.
Al GARJULIO, individually and/or d/b/a Interstate Trucking, John Martinez, Sterling Winthrop, Inc., d/b/a L & F Products, Kodak, John Does # 1-# 16, John Does # 17-# 21 (unknown persons and/or entities), John Does # 22-#25 (unknown persons and/or entities), Defendants, and
Crown Equipment, Corp., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted July 30, 2001.
Decided August 9, 2001.
*1177 Lieberman, Ryan & Forrest, attorneys for appellants (Robert Forrest, Somerville, on the brief).
Drinker, Biddle & Shanley, attorneys for respondent (Robert M. Leonard, of counsel; Stacey P. Rappaport, Florham Park, on the brief).
Before Judges LINTNER and WEISSBARD.
The opinion of the court was delivered by LINTNER, J.A.D.
Plaintiff, Richard Shelcusky,[1] an employee of Reckitt and Coleman (R & C), was injured as the result of an explosion that occurred while he was operating a standard E-type electrically-powered fork lift manufactured by defendant Crown Equipment Company. At the time of the explosion, *1178 he was loading pallets into a tractor trailer. The pallets contained rejected and leaking aerosol cans, which had been shrink-wrapped and packaged in cardboard boxes. The aerosol cans contained a flammable hydrocarbon propellant blend of isobutane and propane gas. The standard E-type fork lift that was being used by plaintiff was not rated for moving flammable product.
Plaintiff instituted a products-liability action against defendant contending that defendant failed to provide an adequate warning on the forklift that would have alerted him not to use an E-type forklift when moving flammable gases. After participating in discovery, defendant filed a motion for summary judgment. Following argument on the motion, Judge Guterl granted defendant's motion and posted his findings of fact and conclusions of law on the Internet on June 6, 2000. Plaintiff's motion for reconsideration filed on June 15, 2000, was heard and denied in a written decision, posted on the Internet on July 31, 2000. Plaintiff filed a second motion for reconsideration, after which notification was received from the judge's chambers that the motion would not be heard. This appeal ensued.
Plaintiff contends that the judge erred because there was a genuine issue of material fact established to show that defendant's failure to warn was a proximate cause of plaintiff's injuries. We disagree with plaintiff's contention and affirm.
We recount only the facts essential to our disposition of the issues presented. At the time of the explosion, plaintiff was moving flammable materials with a forklift that was not rated for use with flammable product. The essential issue was not whether a warning should have been provided, but rather, whether the failure to supply a warning was a proximate cause of plaintiff's injuries. Plaintiff testified at depositions that, at the time of the explosion, he had "no idea what [he] was loading." He testified that all he was told was to help load the trailer. He indicated that no one told him that the material was flammable. According to plaintiff, no one at R & C told him that there was flammable material on the premises. However, he was aware from common sense that things filled with gas could ignite. He could not recall ever being instructed that special forklift trucks should be used around certain materials. He denied being told how to handle flammable materials and any knowledge of different procedures used by R & C respecting such items.
Robert King, R & C's human resource manager, testified that the material that was being loaded by plaintiff was finished product that had been removed for either disposal or de-gassing of the aerosol cans. According to King, R & C did not consider finished products to be flammable. He testified that employees, like plaintiff, were trained to use E-type forklifts when moving flammable raw materials. He distinguished flammable raw materials from finished products as material contained in drums.
An OSHA investigation following the explosion concluded that (1) the forklift used to transport the aerosol cans of household products such as "Wizard Air Freshener" and "Resolve Carpet Cleaner," presented a source of ignition, which posed a fire and explosion hazard; (2) the aerosol cans were stored and prepared for removal from the storage area without being adequately checked to assure they were not leaking; and (3) the employees required to handle the rejected aerosol containers were not provided with instructions as to leaking and vapor hazards associated with them. The investigation related that employees stated "the containers were leaking." Some of the containers had been removed for repackaging. The report noted: *1179 "There was an EE fork lift truck available for use, but was not used" at the time. The investigation confirmed the following regarding the employer's operation procedure at the time of the explosion:
Employer ... did not see this operation as a hazard. They considered the product in the cans a finished product, although `rejected.' As a finished product, a regular fork lift truck for general warehouse use was deemed to be ok by employer.
In support of his motion for summary judgment, plaintiff submitted a certification dated May 12, 2000, reiterating the following information previously testified to by him at depositions:
At the time I was injured I did not know what I was loading, and I had no reason to inquire as to the contents of what I was loading. If it was important to determine what I was loading I would have discovered that the items I was loading were rejected damaged cans that were leaking flammable gases.
Plaintiff then asserted in his certification:
Because I was aware that there were flammable materials on the premises, a warning not to use the Type E forklift where flammable gases or vapors were present would have alerted me to discover that the items I was loading were rejected damaged cans and thus would have prevented me from using the E type forklift and getting injured.
Against this factual backdrop Judge Guterl found the following:
[E]ven if there was a warning on the "E" Rated lift truck and the plaintiff read the warning and sought advise as to whether the products he was moving were flammable, he would not have been informed that the leaking aerosol cans were flammable. Plaintiff's employer clearly did not consider the leaking aerosol cans to be flammable. Accordingly, the Plaintiff's proximate cause argument must fail.
In support of his first motion for reconsideration, plaintiff submitted a certification from a fellow employee, David Lambert. In his certification, Lambert stated that he was aware that the materials contained isobutane propellants and were flammable. He related that there had been an explosion due to isobutane ignition at the plant prior to the time R & C acquired it.
Denying plaintiff's motion for reconsideration, Judge Guterl found:
Plaintiff's motion for reconsideration does not provide this Court with any information that it did not consider when the Defendant ... initially moved for summary judgment. Plaintiff points to portions of his Certification submitted in opposition to the summary judgment motion, his deposition testimony and the certification of a co-worker, David Lambert which Plaintiff alleges demonstrate that this Court erred in granting ... summary judgment. The sum total of the afore-referenced testimony states only that the Plaintiff knew that there were explosive gasses on the premises where he worked. Never, does the Plaintiff testify that he knew that the aerosol cans he was loading at the time of his accident were flammable.
The Plaintiff does not state the aerosol cans were flammable because neither he nor any of his co-workers considered these cans to be a potential fire hazard.... In fact, R & C instructed its employees not to use the "EE" Rated trucks to move these subject aerosol cans because R & C considered them to be "finished product."
In support of his second motion for reconsideration, plaintiff submitted yet another certification, directly contradicting *1180 both his original certification and deposition testimony, stating:
I knew prior to my accident that the rejected and leaking aerosol cans I was loading were flammable and that they contained flammable gases and vapors.
Plaintiff's argument that his "submissions, indulgently treated, state that [he] knew what he loaded was flammable, and that a warning not to use the E-type fork lift with flammable materials would have been enough for him to not use the forklift and get injured," simply put, misses the mark. Contrary to plaintiff's contention, his deposition testimony and initial certification made it clear that he had "no idea" what he was loading at the time explosion occurred. He acknowledged in his depositions that he did not know the material he was moving was flammable. Plaintiff contradicted his prior deposition testimony and certification only after Judge Guterl issued his written decision denying plaintiff's first motion for reconsideration, pointing out that plaintiff had never testified that he knew the materials in question were flammable. A "[p]laintiff cannot create an issue of fact simply by raising arguments contradicting his own prior statements and representations." Mosior v. Ins. Co. of North America, 193 N.J.Super. 190, 195, 473 A.2d 86 (App.Div.1984). A genuine issue of fact cannot be created by a self-contradictory affidavit refuting prior deposition testimony. See Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-544 (9th Cir.1975). "[I]t is only genuine issues of fact and not simply issues created by self-contradictions of an opposing party that are intended to preclude resort to the device of summary judgment." Holifield v. Cities Service Tanker Corp., 421 F.Supp. 131, 136 (E.D.La.1976), aff'd, 552 F.2d 367 (5th Cir.1977).
Generally, when considering a motion for summary judgment, the court must grant the non-moving party all favorable inferences from the competent evidence presented. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). As the Brill Court re-emphasized, it is within our province "to determine whether there is a genuine issue for trial." Ibid. We are not to pass upon the credibility of plaintiff. However, we are not required to accept, as competent evidence, a purely self-serving certification by plaintiff that directly contradicts his prior representations in an effort to create an issue of fact, which his previous testimony had eliminated. Such creative self-contradictions are plainly tailored to contrive issues of fact not borne out by the record. They have no place in our justice system's overriding search for the truth.
The overwhelming evidence here is that plaintiff did not know what he was loading at the time of the accident. Therefore, the existence of a warning not to use the forklift to move flammable material would not have prevented plaintiff from using the forklift. We are satisfied that Judge Guterl properly found that the lack of a warning was not the legal cause of plaintiff's harm. Vallillo v. Muskin Corp., 212 N.J.Super. 155, 159, 514 A.2d 528 (App. Div.1986); Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 209, 485 A.2d 305 (1984); Restatement (Third) of Torts: Product Liability § 2 comment a (1998). There was no genuine issue of material fact because no reasonable jury could conclude that the existence of a warning would have altered plaintiff's conduct. Summary judgment was properly granted. Brill, supra, 142 N.J. at 525, 666 A.2d 146.
Affirmed.
NOTES
[1] As Richard Shelcusky suffered the injuries for which he seeks damages, we refer to him as "plaintiff."